IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | | |
|---|---|---|
| Judy T. Daulton, | ) | |
| | ) | Civil Action No. 8:05-2682-HFF-WMC |
| Plaintiff, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Piedmont Technical College, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the defendants' motion to dismiss and to strike.  The plaintiff is proceeding *pro se*.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

On March 24, 2005, the plaintiff, an instructor in the Business Department of defendant Piedmont Technical College ("the College"), filed with the Equal Employment Opportunity Commission ("EEOC") a charge of employment discrimination against the College.  In that charge, she alleged that in February 2005 the College promoted a junior male instructor, Richard Mandau, to the position of Academic Program Director rather than promoting the plaintiff and/or other similarly situated employees.  The plaintiff specifically alleged, in pertinent part:

> I began my employment with the above cited employer in November, 1989.  I have performed at a satisfactory level.  In February, 2005, I found out a Richard Mandau was promoted to Academic Program Director in which he was not qualified for. To my knowledge myself and other employees exceed the experience, knowledge and education than Mr. Mandau.  We were not considered for the position.

> I asked the Director of Human Resources what was the criteria
> for Academic Program Director.  No explanation was given.

By letter dated June 22, 2005, the EEOC notified the plaintiff that, following its investigation, it was unable to conclude that the information established violations of the statutes.  The letter further notified the plaintiff of her right to sue.

In her complaint, the plaintiff alleged that the defendants denied her a promotion because of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended (comp. ¶¶ 1, 11).  She named as defendants the College and her supervisor, Robert E. Templeton ("Templeton"), who is the Chairman of the Business Department at the College.  She further alleged that the defendants harassed her and treated her disparately because of her gender (comp. ¶¶ 2-10).  Finally, she alleged a claim of defamation based upon state law (comp. ¶ 7).

By order filed April 13, 2006, the Honorable Henry F. Floyd, United States District Judge, adopted this court's recommendation and dismissed all the claims except the claim for discriminatory failure to promote because of gender.  Defendant Templeton was also dismissed from the action.  The remaining defendant, the College, filed a motion for summary judgment on the failure to promote claim on October 2, 2006.  By order filed October 12, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if she failed to adequately respond to the motion.  On November 20, 2006, the plaintiff filed a response to the motion.  The defendant filed a reply brief on December 1, 2006, and the plaintiff filed a sur-reply on December 29, 2006.

## FACTS PRESENTED

As of the fall semester of the 2003-04 academic year, the plaintiff and Richard Mandau, along with five to six other instructors, comprised the faculty of the Business Department of the College.  At the time, the Chair of the Business Department was

2

Robert E. Templeton, who retired at the end of June, 2006. Templeton explains in his affidavit submitted in support of the instant motion that among his responsibilities as Department Chair was the scheduling of courses offered within the Business Department (Templeton aff. ¶ 2). As Templeton describes, with the growth of the College and the Business Department over the years, the scheduling function became an increasingly complex and time-consuming responsibility. By the fall of 2003, there were between 350 and 400 business students, who were served by the College at seven instructional sites in the upstate area, in both day and evening divisions during fall, spring, and summer sessions (Templeton aff. ¶ 2). Further, business courses were offered over the College's TV network and through the internet. A complete course schedule for each instructional session had to be developed and coordinated among all sites, day and evening programs, including TV and internet courses (Templeton aff. ¶ 2; Mandau aff. ¶ 6).

At a departmental meeting in late August or early September of 2003, which was attended by all faculty members in the Department including the plaintiff, Templeton requested assistance with scheduling functions (Templeton aff. ¶ 3; Mandau aff. ¶ 4). Mandau was the only faculty member who responded to Templeton's request during the meeting or anytime thereafter (Templeton aff. ¶ 3; Mandau aff. ¶ 4). Mandau, who had previous experience with schedule preparation and coordination, began working with Templeton to develop the schedule for the Spring 2004 semester. Over the next several semesters, Mandau assumed greater responsibility for scheduling. He developed an Excel program that allowed for creation of a scheduling matrix to analyze different scheduling scenarios (Templeton aff. ¶ 4, 5; Mandau aff. ¶ 5, 6). According to Templeton and Mandau, scheduling the courses for the Business Department is a complicated and time-consuming task, and it placed further demands on Mandau's time as an instructor (Templeton aff. ¶ 4; Mandau aff. ¶ 7). Despite the time demand of the scheduling function, Mandau continued for two years to teach the full course load required of instructors (Templeton aff. ¶ 4; Mandau aff. ¶ 7). Then, in January 2005, in consideration of the additional time Mandau was

3

devoting to scheduling tasks, Templeton sought a "lateral reclassification" for Mandau to give him course release (Templeton aff. ¶ 5-7; Mandau aff. ¶ 8).

The Personnel Action Request Form, dated January 3, 2005, that Templeton submitted to the Human Resources Department of the College asked that Mandau be laterally reclassified to either management or business coordinator based on the scheduling duties he had assumed (Smith aff. ¶ 3; Templeton aff. ¶ 7, ex. A). At no time did Mandau, Templeton, or the College seek a promotion or salary increase for Mandau in conjunction with the requested reclassification (Smith aff. ¶ 5; Mandau aff. ¶ 9). According to Templeton and Mandau, the reclassification was a means to recognize and enable the continuation of Mandau's assumption of certain job duties and, particularly, to reduce his teaching load by one class to offset partially the time demand of scheduling (Templeton aff. ¶ 6; Mandau aff. ¶ 7). The College granted the request effective February 1, 2005, reclassifying Mandau "laterally" from an Instructor to Academic Program Director with "no salary change" (Smith aff. ¶ 5; Templeton aff. ¶ 7). The official position change was from "UG 70 Instructor" to "UE 03 Academic Program Director" (Smith aff. ¶ 5).

The only benefit the reclassification provided to Mandau was that the College could reduce Mandau's required teaching load by one class each semester to provide some relief from the large amount of time devoted to scheduling (Smith aff. ¶ 5; Templeton aff. ¶ 8). Mandau's annual salary of $49,763 remained unchanged, and he received no additional compensation based on the reclassification (Smith aff. ¶ 5; Mandau aff. ¶ 9). Mandau assumed no supervisory responsibilities over other faculty members, nor did he undertake any other administrative responsibilities (Templeton aff. ¶ 8). The reclassification was not considered by Mandau, Templeton, or the College as a promotion or a position advancement, and the title change does not affect any future promotions, appointments, or advancement opportunities (Smith aff. ¶ 8; Templeton aff. ¶ ¶ 6, 8; Mandau aff. ¶ 9). Mandau's reclassification to Academic Program Director was announced in a department meeting on February 11, 2005 (Smith aff. ¶ 6).

4

In a letter to Dr. Thomas V. Mecca, Executive Vice-President/Chief Educational Officer, the plaintiff protested Mandau's reclassification as being a promotional opportunity that "was never communicated to the business faculty," who thus "were not given the [chance] to apply for the position" (def. m.s.j., ex. 4). The College denied the grievance pursuant to College and State policy providing that reclassifications within the same salary range are not adverse actions and thus not grievable (Smith aff. ¶ 7, ex. 5). The plaintiff subsequently filed an EEOC charge and then this *pro se* action alleging that Mandau received a promotion that she was denied because of her sex. As of February 1, 2005, the date Mandau was reclassified, Mandau's salary was approximately $11,000 per year less than the plaintiff's yearly salary (Smith aff. ¶ 5).

### APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

Under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973), the allocation of proof is as follows: (1) the plaintiff-employee must first establish a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant-employer to articulate a legitimate non-discriminatory reason for its actions; and (3) if the defendant carries this burden, the plaintiff must then establish by a preponderance of the evidence that the reason articulated by the employer is a pretext to mask unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802-03).

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because "[i]t is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519) (emphasis in original). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

To establish a *prima facie* case of discriminatory denial of promotion under the *McDonnell Douglas* proof scheme, the plaintiff is required to demonstrate by the preponderance of the evidence that: (1) she is a member of a protected class; (2) her employer had an open position for which she applied; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 230 (4th Cir. 1999), *abrogated in part on other grounds by*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

Assuming for purposes of this motion that the plaintiff can prove that an actual promotional opportunity existed,[1] the plaintiff cannot show that she was rejected for such opportunity under circumstances giving rise to an inference of unlawful discrimination. The

---

[1]While this court has assumed for purposes of this motion that Mandau received a promotion, the evidence in this case tends to show that Mandau was merely laterally reclassified from instructor to program director and that there was no change in his compensation, advancement potential, or any other employment-related benefit.

7

plaintiff has produced absolutely no evidence that she was treated less favorably than Mandau because of her gender.  The plaintiff's "own naked opinion, without more, is not enough to establish a *prima facie* case of . . . discrimination."  *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988).  Furthermore, even if she could establish a *prima facie* case, the defendant has articulated a legitimately non-discriminatory reason for making Mandau the program director – because he stepped forward when the Department Chair requested help with scheduling.  None of the other faculty, including the plaintiff, expressed a willingness to assist with this task.  The plaintiff has failed to point to any evidence that the defendant's articulated reason was pretext for gender discrimination.  As stated above, pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions.  *Holder*, 867 F.2d at 828.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendant's motion for summary judgment be granted.  Any pending nondispositive motions will be held in abeyance pending the district court's disposition of the motion for summary judgment.  Should the district judge adopt this court's recommendation, these motions will be rendered moot.

IT IS SO ORDERED.

s/William M. Catoe
United States Magistrate Judge

February 16, 2007

Greenville, South Carolina

8